[No. 13270. Department Two. December 6, 1916.]

EDENDALE LAND COMPANY, *Appellant*, v. JAMES J. MORGAN *et al.*, *Respondents*.[1]

WATERS AND WATER COURSES—APPROPRIATION—IRRIGATION—RIGHTS OF SETTLERS—BENEFICIAL USE. The prior appropriators of the waters of a creek, who settled upon government land and later acquired title, and their successor in interest, are entitled to use all the waters which they had, within a reasonable time, devoted to a beneficial use in irrigating their lands.

SAME—PRESCRIPTIVE RIGHTS—QUANTITY OF WATER. A prescriptive right cannot be claimed to more than one-half of the waters of a creek, where the ditch through which it was diverted, as first constructed in 1896, did not carry more than one-half of the water, and was not enlarged until 1904, and the action was commenced in 1912 to enjoin the increased diversion.

SAME — APPROPRIATION — WRONGFUL DIVERSION — DAMAGES — EVIDENCE—SUFFICIENCY. In an action for the diversion of the waters of a creek, evidence of damages based on the assumption that the plaintiffs were entitled to all the waters, does not show the extent of the damages from a wrongful diversion of one-half of the waters.

[1]Reported in 161 Pac. 360.

Appeal from a judgment of the superior court for Stevens county, Sessions, J., entered March 15, 1915, in favor of the defendants, dismissing an action to determine conflicting claims to the waters of a stream. Reversed.

*Murphy & Grant*, for appellant.

*Rochford & Wilson*, for respondents.

MAIN, J.—The parties to this action are rival claimants to the waters of the north fork of Stranger creek, which is a small stream in Stevens county. The trial of the action resulted in a judgment of dismissal of the plaintiff's complaint. From such judgment, the appeal is prosecuted.

The facts are these: During the month of April, 1889, one Charles E. Potter settled upon a certain tract of land consisting of 160 acres, having purchased an Indian squatter's right thereto. In the course of time, Potter acquired this land under the Federal homestead act. At about the time Potter settled upon this tract of land, three other persons, Almira J. Burr, William R. Pierce, and L. W. Compton, also settled upon other 160-acre tracts in the immediate vicinity, and in time acquired title from the Federal government, as did Potter. Immediately after Potter settled upon his land, he began to divert the waters of the main channel of Stranger creek for domestic use and irrigation. This water was taken through what is known in the record as the Chinese ditch and the Indian ditch, the former having been constructed years before for the purpose of carrying water to a placer mining claim near the Columbia river. The Indian ditch was used by the Indian squatter for the purpose of carrying water to the land for irrigation purposes. After Potter settled upon the land, he improved these ditches, and continued, from year to year, to clear his land, and irrigate the same from the waters of Stranger creek, carried through the ditches mentioned. The other three parties above referred to also used water carried through the Chinese ditch for domestic and ir-

rigation purposes. In the year 1905, the appellant acquired Potter's land and that of the other three parties. After this land was acquired by the appellant, it put in a wooden pipe irrigation system, cleared and set much of the land to fruit trees, and sold it off in small tracts.

During the year 1887, the defendants in this action settled upon a tract of land upon the north fork of Stranger creek, and in time acquired the land from the United States government. In 1896, the defendants constructed a ditch, and began taking the water from the north fork of Stranger creek for the purpose of irrigating their land. In 1904, they enlarged this ditch, and after they began taking water through the enlarged ditch, they took about four-fifths of the water flowing in the north fork of Stranger creek during the dry or irrigation season. The appellant, not having sufficient water to irrigate its land when four-fifths of the water of the north fork of Stranger creek was being diverted by respondents, brought this action, claiming that it was entitled to all of the water of Stranger creek, including that flowing in the north fork, south fork, and middle fork. The appellant's point of intake, as was Potter's, was below the point on the stream where the water from the three forks had united and formed the main channel.

Without reviewing the evidence in detail, and after a most careful consideration of the same, we are of the opinion that Potter and the other three parties mentioned, who were the predecessors in interest of the appellant, acquired the right by appropriation to all the waters of Stranger creek, provided they had devoted the same to a beneficial use within a reasonable time. Up to 1905, when Potter sold to the appellant, all of the waters of Stranger creek were not needed for the purpose of irrigating the land then under cultivation. While it cannot be determined with mathematical accuracy the amount of water which had been appropriated and devoted to a beneficial use within a reasonable time, yet it seems fairly inferable from the evidence that the appellant's

predecessors in interest, at the time it acquired title to the land and water rights, had devoted an amount of water to a beneficial use equal to all the waters flowing in the south and middle forks of Stranger creek, and one-half of that flowing in the north fork. It follows, therefore, that the trial court erred in not decreeing that the appellant was entitled to this quantity of water.

What the trial court's views may have been upon the evidence, there is nothing in the record to indicate. No findings of fact were made; no opinion of the trial judge appears in the record. The judgment was simply one of dismissal. The respondents had interposed the plea of the statute of limitation. The record being as it is, this is not a case where this court reverses the finding of a trial court upon conflicting oral testimony.

In any view of the case, the appellant was entitled to have adjudged to it one-fifth of the waters of the north fork of Stranger creek, because respondents were only claiming the right to four-fifths thereof. The respondents had not acquired by prescription a right to four-fifths of the water of the north fork of the creek. The ditch, as constructed in 1896, carried not to exceed one-half of the water. The present action was begun in 1912. No prescriptive right could be acquired, if that were relied upon, for a greater amount of water than was carried through the ditch as first constructed, and an equal amount which was a part of the flow in the enlarged ditch.

The appellant claimed damages in a considerable sum. The evidence in support of the damages was that of the president of the appellant company, and was based on the assumption that the appellant was entitled to all of the waters of the north fork of Stranger creek. It only being entitled to one-half of the waters, the evidence as to damages does not show the extent of the damages based upon this fact.

By way of repetition, it may be said that, taking into con-

sideration all the evidence in the case bearing upon the rights claimed by each party to the water, justice would seem to demand that each of the respective contenders be given one-half of the water of the north fork of Stranger creek.

The judgment will be reversed, and the cause remanded with instructions to the superior court to enter a judgment dividing equally between the parties the waters of the north fork of Stranger creek.

MORRIS, C. J., PARKER, and HOLCOMB, JJ., concur.